UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| | ) |
| v. | ) 2:16-cr-174-JDL |
| | ) |
| WENDER SANTOS, | ) |
| | ) |
| Defendant. | ) |

**ORDER ON MOTION FOR COMPASSIONATE RELEASE**

Wender Santos pleaded guilty in April 2018 to one count of conspiracy to possess with intent to distribute and distribute fentanyl, in violation of 21 U.S.C.A. §§ 841(a)(1), (b)(1)(C), 846 (West 2021), and one count of aiding and abetting the possession with intent to distribute fentanyl, in violation of 18 U.S.C.A. § 2 (West 2021) and 21 U.S.C.A. § 841(a)(1) (West 2021). In October 2018, Santos was sentenced to a term of imprisonment of 130 months, to be followed by a term of supervised release of three years. Santos now moves for compassionate release under 18 U.S.C.A. § 3582(c)(1)(A)(i) (West 2021), based on the alleged health risks he faces in federal custody due to the COVID-19 pandemic (ECF No. 146, 163). For the reasons that follow, I grant the motion.

**I. LEGAL STANDARD**

The compassionate release statute, as amended by the First Step Act of 2018, Pub. L. No. 115−391, § 603(b), 132 Stat. 5194, 5239−41 (codified at 18 U.S.C.A. § 3582(c)−(d) (West 2021)), permits a court to consider a motion for compassionate release brought by a defendant "after the defendant has fully exhausted all

1

administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C.A. § 3582(c)(1)(A). Once a court determines that it may consider a defendant's motion, the court may reduce the defendant's sentence if, after considering the factors set forth in 18 U.S.C.A. § 3553(a), it finds that "extraordinary and compelling reasons warrant such a reduction" and "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A)(i).

Because the policy statement issued by the Sentencing Commission under the compassionate release statute has not been updated since the enactment of the First Step Act, I previously determined that the policy statement must be considered, but that it need not be strictly applied when deciding whether to grant compassionate release. *See United States v. Calhoun*, No. 2:15-cr-00056-JDL-1, 2020 U.S. Dist. LEXIS 117527, at *3 (D. Me. July 1, 2020); *accord United States v. Brooker*, 976 F.3d 228, 235-36 (2d Cir. 2020).

## II. ANALYSIS

Before evaluating the merits of Santos's motion for compassionate release, I address the threshold question of whether Santos has pursued administrative remedies, which is a prerequisite to judicial action.

### A. Administrative Remedies

As noted above, a court may only consider a defendant's motion for compassionate release "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's

2

behalf" or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C.A. § 3582(c)(1)(A). Courts have referred to this provision as a "hybrid requirement" that defendants "either exhaust or wait thirty days." *See, e.g.*, *United States v. Haney*, No. 19-cr-541 (JSR), 2020 WL 1821988, at *3 (S.D.N.Y. Apr. 13, 2020). I have previously determined that the hybrid requirement is a non-jurisdictional claim-processing rule. *See Calhoun*, 2020 U.S. Dist. LEXIS 117527, at *5 (citing *United States v. Ramirez*, Criminal Action No. 17-10328-WGY, 2020 WL 2404858, at *7 (D. Mass. May 12, 2020)). Although courts generally must enforce the hybrid requirement if the Government properly raises an objection based on a defendant's failure to comply with it, such objections can be waived or forfeited.[1] *Id.* at *5–6 (citing *Fort Bend Cty. v. Davis*, 139 S. Ct. 1843, 1849 (2019) and *United States v. Reyes-Santiago*, 804 F.3d 453, 458, 478 (1st Cir. 2015)).

Santos filed a request for either transfer to home confinement or reduction of his sentence to time served with prison administrators on May 6, 2020. That request was subsequently denied. While there is no indication that Santos has taken steps to appeal the denial of his request, the Government concedes that Santos has exhausted his administrative remedies. Therefore, I consider any potential objection on behalf of the Government waived.

---

[1] I do not address whether any equitable exceptions may excuse a defendant's failure to comply with the claim-processing rule at issue. *See Fort Bend Cty.*, 139 S. Ct. at 1849 n.5; *Ramirez*, 2020 WL 2404858, at *7 (describing the split of authorities on this issue).

B.   **The Merits**

   1.   **Extraordinary and Compelling Reasons**

As explained above, a court may only grant compassionate release if it finds that "extraordinary and compelling reasons" warrant a reduction in the defendant's sentence.  18 U.S.C.A. § 3582(c)(1)(A)(i).  Santos asserts that extraordinary and compelling reasons exist because he faces a higher risk of contracting COVID-19 while incarcerated in BOP custody, and because his health conditions place him at a high risk of a severe complications if he were to become infected.  The Government does not agree with all of the reasons put forth by Santos in support of his position, but ultimately agrees that Santos has established extraordinary and compelling reasons for purposes of § 3582(c)(1)(A)(i).  I briefly survey the facts which support this determination.

Santos is currently incarcerated at FCI Berlin in New Hampshire.  The parties sought, but were not able to acquire, recent statistics regarding the number of inmates tested for COVID-19 at FCI Berlin over a recent ninety-day period, along with the number of inmates who have tested positive.  Santos asserts, and the Government does not dispute, that the rate of COVID-19 infections in BOP facilities across the nation has grown substantially in recent months.  Santos specifically cites data gathered by the BOP which indicates that the number of inmates and BOP staff members who have tested positive for COVID-19 in the past two months is nearly double the number that tested positive over the prior seven-and-a-half months, growing from 21,233 on November 6, 2020 to 40,533 on January 7, 2021.  He further notes that COVID-19 has infected roughly 19.7% of the population of BOP

4

institutions, while it has infected roughly 4.3% of the general population of the United States.

Santos also argues that he is at a heightened risk of severe illness or death from COVID-19 if he were to become infected both because he is clinically obese and because he only has one lung due to having been stabbed when he was younger, which causes him difficulty breathing. Santos's medical records confirm that he is obese. Santos is 70.8 inches tall and weighs 218 pounds. According to the CDC, this places his Body Mass Index (BMI) at 30.6. *Adult BMI Calculator*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/healthyweight/assessing/bmi/adult_bmi/english_bmi_calculator/bmi_calculator.html (last visited Jan. 8, 2021). The CDC classifies obesity—defined as having a BMI of 30 or above—as a factor that increases the risk of severe illness from COVID-19. *People with Certain Medical Conditions*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#obesity (last visited Jan. 8, 2021). The Government concedes that obesity is a serious medical condition that constitutes an "extraordinary and compelling reason" warranting Santos's compassionate release.

Santos's medical records also reflect that Santos's left lung was removed after he was stabbed in 2012, which results in him experiencing occasional shortness of breath. The Government contends that the removal of Santos's lung does not increase his risk of COVID-19 complications because Santos's remaining lung appears

5

uninjured, and because "his ordinary, day-to-day work activities appear to be unaffected by the loss of a lung." ECF No. 171 at 11.

It is established that COVID-19 "attacks the lungs and can cause a host of respiratory conditions: shortness of breath and hypoxia (oxygen deficiency), as well as pneumonia, acute respiratory distress syndrome, and permanent lung damage." *United States v. Mueller*, 471 F. Supp. 3d 625, 629 (E.D. Pa. 2020). In addition, "lung removal surgery leads to permanent loss of lung function[.]" *Id.* (citing Luca Luzzi et al., *Long-term Respiratory Functional Results after Pneumonectomy*, 34 Eur. J. Cardio-Thoracic Surgery 164, 164 (2008); C.T. Bolliger et al., *Pulmonary function and exercise capacity after lung resection*, 9 Eur. Respiratory J. 415 (1996)). Thus, a person with only one lung "has less of a protective buffer of lung function should he be infected. Diminished lung capacity from COVID-19 could be even graver for [a person with only one lung] than for someone with normal lung function." *Id.* Accordingly, despite his ability to perform day-to-day activities with relatively normal lung function, Santos faces an elevated risk of serious complications should he contract COVID-19 because he only has one lung.

Because Santos has established that he is at heightened risk of contracting COVID-19 while in the custody of BOP and that his physical conditions put him at a heightened risk of severe illness from COVID-19, I conclude that extraordinary and compelling reasons exist to support compassionate release.[2]

---

[2] Santos also contends that his Hispanic ethnicity increases his risk of COVID-19 complications, noting that Hispanic people are hospitalized by COVID-19 at a higher rate than non-Hispanic white people. However, while the CDC does note that "[t]here is increasing evidence that some racial and ethnic minority groups are being disproportionately affected by COVID-19," it also points to "inequities in social determinants of health" as the reason for the high rates of COVID-19 infections and complications among racial minorities. *Health Equity Considerations & Racial & Ethnic Minority*

### 2.   18 U.S.C.A. § 3553(a) Sentencing Factors

Having determined that extraordinary and compelling reasons exist, I turn to whether Santos's compassionate release would be consistent with the sentencing factors set forth in 18 U.S.C.A. § 3553(a).  Santos was convicted of one count of conspiracy to possess with intent to distribute and distribute fentanyl, in violation of 21 U.S.C.A. §§ 841(a)(1), (b)(1)(C), 846, and one count of aiding and abetting the possession with intent to distribute fentanyl, in violation of 18 U.S.C.A. § 2 and 21 U.S.C.A. § 841(a)(1).  Specifically, Santos was the head of a drug operation based in Lawrence, Massachusetts that moved a significant amount of fentanyl through portions of New England for a period of 18 to 24 months, beginning when he was roughly 19 or 20 years old.  Santos earned his livelihood by recruiting, directing, and compensating a number of lower-level drug couriers who brought bulk quantities of fentanyl into the State of Maine.

In imposing the original sentence in this case, I applied the factors set forth in 18 U.S.C.A. § 3553(a).  Those factors include the nature and circumstances of the offense, the personal history and characteristics of the defendant, the kinds of sentences available, the Sentencing Guidelines, the need to avoid unwarranted sentencing disparities, and the need to provide restitution.  Further, § 3553(a)

---

*Groups*, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/community/health-equity/race-ethnicity.html (last visited Jan. 8, 2021).  While the CDC's analysis presents a troubling picture of the impact systemic racism, lack of equal economic opportunity, or other factors may have on public health in minority communities, it does not suggest that Hispanic individuals are inherently predisposed to COVID-19 infection and complications.  Because Santos is currently incarcerated and should have access to healthcare through the Bureau of Prisons if he needs it, I am not persuaded that Santos's ethnicity places him at an increased risk of severe illness from COVID-19 if he remains incarcerated relative to the other individuals with whom he is incarcerated.

requires that the sentence reflect the seriousness of the offense that was committed, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public from further crimes, and provide the defendant with needed training, medical care, and other treatment in the most effective way.

At sentencing, I focused on the seriousness of the offense, the need to afford both Santos and the general public sufficient deterrence, and the need to provide Santos with educational and vocational training. I noted "the seriousness of fentanyl," which is "the most toxic substance we see in court these days" and which puts both users and first responders at serious risk of injury or death. Sentencing Tr. at 44. I emphasized the fact that Santos's conduct fueled the drug addictions of many people and increased the risk that those individuals and the first responders assisting them could die from fentanyl consumption. Ultimately, I concluded that this conduct was extremely serious and that the sentence imposed must deter both Santos and the general public from engaging in similar conduct.

My consideration of Santos's personal history and characteristics led me to order a downward variance from the sentencing range under the U.S. Sentencing Commission Guidelines. Specifically, I noted that Santos grew up in extreme poverty in the Dominican Republic and arrived in the United States at age fourteen, where he was placed in high school without being able to speak English. Santos's father kicked him out of the house at age sixteen, leaving him to fend for himself. Santos's adolescence was "marked by [serious] deprivations, extreme poverty, the absence of parental supervision, [and] the absence of . . . a role model," all of which contributed to him turning to drug distribution at age 19 as a means of support. *Id.* at 47. Despite

8

these hardships, Santos had a large number of family members and friends speak on his behalf at sentencing who described his positive characteristics and traits, and their belief in his potential for complete rehabilitation.

In addition, Santos was a young man, barely out of adolescence when he committed these offenses. His prior criminal history was minimal, involving a conviction for theft when he as 17 and a conviction for driving while intoxicated when he was 21. He had no prior felony convictions and he had not previously served time in jail or prison. He also did not have a history of violence or using firearms or other weapons.

After weighing all these factors, I imposed a term of imprisonment of 130 months—below the Guidelines range of 168 to 210 months—to be followed by three years of supervised release. Additionally, because Santos had a history of substance abuse, I recommended that he be considered for and complete the 500-Hour Comprehensive Drug Treatment Program during his term of imprisonment. I further noted that incarceration would provide Santos with needed educational and vocational training.

I now revisit the § 3553(a) factors to determine whether granting compassionate release is appropriate. A number of factors weigh in favor of granting Santos's motion for compassionate release. First, as I have already noted, Santos faces a serious risk of complications or death should he contract COVID-19. Next, Santos has taken a number of positive steps toward rehabilitation while incarcerated. He has not received any disciplinary infractions, and he has obtained his General Education Diploma (GED) and completed a number of additional educational courses.

He has also improved his English and completed a substance abuse education program. And he has worked as an orderly while incarcerated, earning positive work performance evaluations.

In addition, as was true at the time of sentencing, Santos has the benefit of support from his family and friends, several of whom have written letters in support of Santos's motion for compassionate release, commenting on Santos's growth and maturity since his incarceration and the dedication he has shown to his three young children during his time in prison. Santos has presented a plan to reside with his fiancée in Massachusetts should he be released, and he has plans for employment.

At this time, Santos presents a relatively low risk of danger to the community should his request for compassionate release be granted. As I have already noted, his criminal history consists of two convictions prior to the instant offense—one for shoplifting at age 17 and one for driving while impaired at age 21. I noted specifically at sentencing that those convictions did not involve any violence, weapons, or other aggravating circumstances, and neither conviction led to any term of imprisonment. Thus, his current sentence represents the first time he has been incarcerated. Additionally, following his arrest but prior to his sentencing, Santos was successful on pretrial release for more than a year.

This is an instance in which the seriousness of an offender's crime weighs against the granting of compassionate release. The lengthy range of imprisonment called for by the Guidelines in Santos' case was heavily influenced by the drug quantity determination and Santos' role as a leader. To date, Santos has completed approximately thirty-two percent of that sentence, accounting for possible good time

credits. His release this early in his sentence undoubtedly minimizes the seriousness of his criminal conduct and the threat that the sale of fentanyl presents to the community.

However, the § 3553(a) factors ultimately provide strong support for granting Santos's compassionate release request. He was a young man when he committed his crime after an extraordinarily difficult childhood. After his arrest he was successfully on pretrial release for more than a year, and since his incarceration he has not had any disciplinary incidents. Further, I find that he presents a low risk of danger to the community should his request for compassionate release be granted. After considering all the § 3553(a) factors, I conclude that this is an instance in which a defendant's failure to have served a substantial portion of his or her sentence does not substantially detract from a compelling case favoring his immediate compassionate release.

### C.   Plan for Release

Although I find that Santos has met the requirements for compassionate release, an appropriate release plan must be approved by the Court. Santos has already proposed a plan for release (ECF No. 181). The parties are directed to expeditiously determine, in consultation with the U.S. Probation and Pretrial Services Office, whether that plan or some other agreed-to release plan can be achieved. The U. S. Probation and Pretrial Services Office is directed to file a report to this Court regarding the status of these efforts within twenty days of the date of this order. In addition, the U.S. Probation and Pretrial Services Office and the parties

may submit proposed additional or revised conditions of supervised release for the Court's consideration.

### III.  CONCLUSION

For the reasons explained above, Santos's motion for compassionate release (ECF Nos. 146, 163) is **GRANTED**; provided, however, that he shall only be released after the Court has approved a home release plan, and that Santos shall remain subject to a period of supervised release.

**SO ORDERED.**

Dated:  January 11, 2021

                                                 **/s/ JON D. LEVY**
                                    **CHIEF U.S. DISTRICT JUDGE**